## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

_____

|  |  |
|---|---|
| In re | ) |
|  | ) |
| CITY OF DETROIT, MICHIGAN, | ) |
|  | ) |
| Debtor. | ) |
| _____ | ) |
|  | ) |
| AMBAC ASSURANCE CORPORATION, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
|  | ) |
| CITY OF DETROIT, MICHIGAN, | ) |
| KEVYN D. ORR, individually and in his | ) |
| official capacity as EMERGENCY | ) |
| MANAGER, JOHN NAGLICK, | ) |
| individually and in his official capacity as | ) |
| FINANCE DIRECTOR, | ) |
| MICHAEL JAMISON, | ) |
| individually and in his official capacity as | ) |
| DEPUTY FINANCE DIRECTOR, and | ) |
| CHERYL JOHNSON, individually and | ) |
| in her official capacity as TREASURER, | ) |
|  | ) |
| Defendants. | ) |
| _____ | ) |

Case No. 13-53846

In Proceedings Under
Chapter 9

Hon. Steven W. Rhodes

Adversary Proceeding
No. _____

## COMPLAINT OF AMBAC ASSURANCE CORPORATION
## FOR DECLARATORY JUDGMENT AND ORDER

Plaintiff Ambac Assurance Corporation ("Ambac"), a creditor and/or party in interest in the above-captioned case, by and through its undersigned counsel, seeks a declaratory judgment and order and alleges as follows:

**Introduction**

1.     Having issued hundreds of millions of dollars of unlimited tax general obligation bonds (the "Unlimited Tax Bonds") and limited tax general obligation bonds (the "Limited Tax Bonds," and collectively with the Unlimited Tax Bonds, the "Bonds") to fund vital capital improvements identified by the Mayor and the City Council of Detroit (the "City Council"), the City of Detroit (the "City") is now unlawfully diverting voter-approved and first budget obligation *ad valorem* taxes that the City levies and collects for the sole purpose of paying principal of and interest on the Unlimited Tax Bonds and Limited Tax Bonds.

2.     Unique among the City's financial obligations, the Unlimited Tax Bonds were issued only after authorizing resolutions by the City Council, the legislative body of the City, and approval by a majority of the voters in a city-wide election establishing a pledge of *ad valorem* taxes, as security, to repay these obligations exclusively.  Attached as Exhibit A are true and correct copies of five ballot questions seeking voter approval of specific capital projects that were financed with a portion of the proceeds of the Unlimited Tax Bonds.  Similar ballot

questions were passed with respect to every capital or financial project financed by the City with Unlimited Tax Bonds.

3.    In approving each bond referendum, the City's voters authorized the City to exceed the otherwise applicable maximum rate for *ad valorem* taxes contained in article IX, section 6 of the Michigan Constitution (a true and correct copy of which is attached hereto as Exhibit B). Because the City had reached the constitutional tax rate limitations at the time the Unlimited Tax Bonds were issued, the City, in the absence of voter approval, would have had no authority to levy and collect these *ad valorem* taxes.

4.    Likewise, the City issued the Limited Tax Bonds only after the City Council passed resolutions enumerating the specific capital and financial projects to be financed with the proceeds of the Limited Tax Bonds. The City pledged as security for the repayment of the Limited Tax Bonds the first *ad valorem* taxes collected within the constitutional tax rate limit.

5.    Pursuant to Act 34 of the 2001 Revised Municipal Finance Act, Mich. Comp. Laws § 141.2101 *et seq*. ("Act 34," a true and correct copy of which is attached hereto as Exhibit C), and three resolutions adopted by the City Council on June 14, 2004 (the "2004 Unlimited Tax Resolution" or the "Unlimited Tax Resolution"), May 26, 2004 (the "2004 Limited Tax Resolution"), and May 6, 2005 (the "2005 Limited Tax Resolution;" collectively with the 2004 Limited Tax

3

Resolution, the "Limited Tax Resolutions;" and collectively with the 2004

Unlimited Tax Resolution and the 2004 Limited Tax Resolution, the

"Resolutions," true and correct copies of which are attached hereto as <u>Exhibit D</u>),

Michigan law requires the City to:

- levy the full amount of *ad valorem* taxes, without limitation as to rate or

  amount, necessary to repay the Unlimited Tax Bonds, which are in addition

  to other *ad valorem* taxes the City is authorized to levy, and to levy an

  amount of *ad valorem* taxes within the City's constitutional limits in an

  amount sufficient to pay the principal and interest on the Limited Tax

  Bonds;

- collect the proceeds of the *ad valorem* taxes levied for the debt service on

  the Unlimited Tax Bonds and Limited Tax Bonds and deposit those proceeds

  in segregated debt retirement funds (the "Debt Retirement Funds"); and

- use the proceeds of the segregated *ad valorem* taxes only to pay the principal

  of and interest on the Unlimited Tax Bonds and Limited Tax Bonds.

6.     Act 34 also provides that any officer who willfully violates these

payment restrictions is personally liable to the holders of the relevant bonds for the

loss arising from the failure to comply with the restrictions.  Mich. Comp. Laws

§ 141.2701(7).

7.     Under Michigan law, the City has no equitable or beneficial interest in either the proceeds of the *ad valorem* taxes levied and pledged specifically to secure repayment of the Unlimited Tax Bonds, or the proceeds of the *ad valorem* taxes pledged to secure the repayment of the Limited Tax Bonds.  Those revenues are restricted funds that cannot be used by the City for any other purpose except to satisfy the City's repayment obligations with respect to the Bonds (these *ad valorem* tax revenues are sometimes referred to collectively in this Complaint as the "Restricted Funds").

8.     On October 1, 2013, the City defaulted on its obligation to make interest payments on the Unlimited Tax Bonds in the amount of $9,372,275, including $1,994,281 insured by Ambac.  The City also defaulted on its obligation to make interest payments on its Limited Tax Bonds in the amount of $4,348,211, including $2,266,586 insured by Ambac.  Ambac duly paid the resulting claims under the respective financial guaranty insurance policies in such amounts.  Upon payment, Ambac received an assignment from the registered holder of the Bonds of its right to the payments owed by the City and other related rights.  Thus, Ambac is subrogated to the rights of the holders of the Ambac-insured Unlimited Tax Bonds and Limited Tax Bonds (the "Bondholders") and holds direct claims against the City in the total amount of $4,260,867.  If the City continues to default on future payments, the amount of Ambac's claim will increase.

9.     The City has stated publicly that it intends to continue to levy and collect the Restricted Funds post-petition, but that it will not segregate the Restricted Funds.  The City has also indicated that post-petition it is using and intends to continue to use the Restricted Funds for payment of its general operations.  This conduct violates Michigan law (including the express terms of Act 34) and the Resolutions.

10.     The City has rejected Ambac's many efforts to resolve this dispute consensually.  The City's refusal to segregate the Restricted Funds in compliance with state law during the pendency of this Chapter 9 case (and while the parties are in mediation), and the City's improper use of the Restricted Funds in derogation of the Bondholders' and Ambac's rights necessitate the filing of this action at this time.

11.     Ambac commences this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001 to obtain a declaratory judgment that, under Michigan law, (i) the Defendants are required to deposit the Restricted Funds into the Debt Retirement Funds as the Defendants collect *ad valorem* taxes, (ii) the Defendants are required to segregate and not commingle the Restricted Funds with other funds of the City, (iii) the proceeds of the *ad valorem* taxes levied and collected by the City for the purpose of paying the Bondholders of the Unlimited Tax Bonds, and the proceeds of the *ad valorem* taxes pledged and earmarked for

the purpose of paying the Bondholders of the Limited Tax Bonds, are Restricted Funds, and the Defendants are prohibited from using these Restricted Funds for any purpose other than repaying the Bondholders, and (iv) the Defendants are prohibited from granting any super-priority status or any other interest to any creditor or any other person under Section 364 (defined below) pursuant to the relief requested in the Financing Motion (as defined below) or otherwise, that would impair the interest of the Bondholders and Ambac in the Restricted Funds.[1] Ambac further seeks an order directing the Defendants to deposit the Restricted Funds in the Debt Retirement Funds and to segregate and not commingle the Restricted Funds with other funds of the City, and prohibiting the Defendants from granting any super-priority status or any other interest to any creditor or any other person under Section 364 pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the Bondholders' and Ambac's interest in the Restricted Funds.

---

[1] By its Complaint, Ambac does not seek declaratory relief regarding the ultimate disposition of the Restricted Funds at this time, but rather seeks to ensure that the Restricted Funds remain restricted during the pendency of the chapter 9 case in accordance with state law.  If this Court determines that the City is eligible to be a debtor under chapter 9 of Title 11, issues as to whether the Restricted Funds are impressed with a statutory lien as defined in section 11 U.S.C. § 101(53) and constitute "special revenues" as defined in 11 U.S.C. § 902 will likely need to be determined at a later time following necessary and appropriate fact and expert discovery.

12.    Because Plaintiffs are simply asking the Court to require the City to abide by the law, and because the City has no equitable or beneficial interest in these Restricted Funds, 11 U.S.C. § 904 ("Section 904") is not implicated by this complaint, and this Court has subject matter jurisdiction to award the relief Ambac is requesting.  Moreover, Section 904 does not prohibit the Court from entering any form of relief against any Individual Defendants (as defined below).

## Parties

13.    Plaintiff Ambac is a Wisconsin corporation with its principal place of business at One State Street Plaza, New York, NY 10004.  Ambac is a monoline bond insurer that provides financial guarantees to, among others, the U.S. public finance market.  Ambac insures approximately $170 million of Bonds issued by the City.

14.    Defendant City is a home rule city under Act 279 of 1909, as amended, the Home Rule City Act, Mich. Comp. Laws § 117.1 *et seq.* ("Act 279," a true and correct copy of which is attached hereto as Exhibit E).  The City is a municipality that commenced a chapter 9 proceeding in the United States Bankruptcy Court for the Eastern District of Michigan on July 18, 2013.

15.    Defendant Kevyn D. Orr is the Emergency Manager for the City (the "Emergency Manager"), serving in accordance with Public Act 436 of 2012 of the State of Michigan, also known as the Local Financial Stability and Choice Act,

Mich. Comp. Laws §§ 141.1541 – 141.1575 ("Act 436," a true and correct copy of which is attached hereto as Exhibit F), his appointment to the position having been made effective on March 28, 2013.

16.     Defendant John Naglick is the Finance Director for the City (the "Finance Director"), having served in that position since October 7, 2013.

17.     Defendant Michael Jamison is the Deputy Finance Director for the City (the "Deputy Finance Director"), having served in that position since August 2012.

18.     Defendant Cheryl Johnson is the former Finance Director and current Treasurer of the City (the "Treasurer," and collectively with the Emergency Manager, Finance Director, and Deputy Finance Director, the "Individual Defendants").

19.     Joinder of all defendants is proper under Rule 20 of the Federal Rules of Civil Procedure, made applicable to this action by Bankruptcy Rule 7020.

## Jurisdiction and Venue

20.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the Standing Order of Reference to the Bankruptcy Court in the Eastern District of Michigan, E.D. Mich. L.R. 83.50(a), pursuant to 28 U.S.C. § 157(a).  Subject matter jurisdiction exists pursuant to 28 U.S.C. § 157(b) as a case under Title 11 of the United States Code (the "Bankruptcy Code" or

"Title 11") and a core proceeding arising under Title 11, or arising in a case under Title 11 in accordance with 28 U.S.C. § 157(b)(2).

21.     As described in greater detail herein, there is an actual case and controversy under 28 U.S.C. § 2201(a).

22.     Venue of the case is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

23.     For the reasons articulated in paragraph 12 above, Section 904 is not implicated by this Complaint, and this Court has subject matter jurisdiction to award the relief requested herein.

<u>**General Allegations**</u>

**A.      The Bonds Insured by Ambac**

24.     According to the City's Proposal to Creditors, dated June 14, 2013 (the "Prepetition Proposal," a true and correct copy of which is attached hereto as <u>Exhibit G</u>), the City estimates that, as of the close of Fiscal Year 2013 (*i.e.*, June 30, 2013), it had $369.1 million in outstanding principal amount of Unlimited Tax Bonds maturing through November 1, 2035 (excluding $100 million of bonds purported to be secured by a second lien on distributable state aid), and $161 million in outstanding principal amount of Limited Tax Bonds (excluding $249.8 million of bonds purported to be secured by a first lien on distributable state aid, and $129.5 million of bonds purported to be secured by a third lien on distributable

state aid), maturing through November 1, 2035. On a net basis, in amounts outstanding as of June 30, 2013, Ambac insures $77,635,000 of the City's Unlimited Tax Bonds and $92,705,000 of the City's Limited Tax Bonds.

25.     As a monoline bond insurer, Ambac is obligated to pay to owners of Ambac-insured Unlimited Tax Bonds and Limited Tax Bonds the full scheduled principal of and interest on the Ambac-insured Bonds when due as required by its bond insurance policies to the extent the City does not make the payments under the insured Bonds. Under relevant provisions of the applicable bond documents, the bond insurance policies, and applicable law, to the extent Ambac makes payments under its policies, it receives an assignment of rights from the registered owner of the Bonds and is subrogated to the rights of the Bondholders, thus effectively stepping into the shoes of the Bondholders.

26.     Pursuant to the 2004 Unlimited Tax Resolution and a Sale Order issued by the City's then finance director dated August 27, 2004 (the "2004 Unlimited Tax Sale Order"), the City issued General Obligation Bonds (Unlimited Tax) Series 2004-A(1) (the "2004-A(1) Bonds"), General Obligation Bonds (Unlimited Tax) Series 2004-A(2) (the "2004-A(2) Bonds"), General Obligation Bonds (Unlimited Tax) Series 2004-B(1) (the "2004-B(1) Bonds"), and General Obligation Bonds (Unlimited Tax) Series 2004-B(2) (the "2004-B(2) Bonds" and,

collectively with the 2004-A(1) Bonds, the 2004-A(2) Bonds, and the 2004-B(1) Bonds, the "2004 Unlimited Tax Bonds").

27.     Pursuant to the 2004 Limited Tax Resolution and a Sale Order issued by the City's then Finance Director dated August 27, 2004 (the "2004 Limited Tax Sale Order"), the City issued General Obligation Bonds (Limited Tax) Series 2004 (the "2004 Limited Tax Bonds").

28.     Pursuant to the 2005 Limited Tax Resolution and a Sale Order issued by the City's then finance director dated June 24, 2005 (the "2005 Sale Order"), the City issued General Obligation Bonds (Limited Tax) Series 2005-A(1) (the "2005-A(1) Bonds"), General Obligation Bonds (Limited Tax) Series 2005-A(2) (the "2005-A(2) Bonds"), and General Obligation Bonds (Limited Tax) Series 2005-B (the "2005-B Bonds" and, collectively with the 2005-A(1) Bonds and the 2005-A(2) Bonds, the "2005 Bonds").  A true and correct specimen of an Unlimited Tax Bond and a Limited Tax Bond, respectively, insured by Ambac, are attached hereto as Exhibit H.  True and correct copies of the 2004 Unlimited Tax Sale Order, the 2004 Limited Tax Sale Order, and the 2005 Limited Tax Sale Order are attached as Exhibit I.

29.     Ambac issued Financial Guaranty Insurance Policy numbers 22980BE and 22981BE, each effective September 9, 2004, insuring the City's payment obligations under the 2004 Unlimited Tax Bonds and the 2004 Limited Tax Bonds,

respectively.  Ambac issued Financial Guaranty Insurance Policy number 24218BE, effective June 29, 2005, insuring the City's payment obligations under the 2005 Bonds (collectively with Policy numbers 22980BE and 22981BE, the "Ambac Policies," true and correct copies of which are attached hereto as <u>Exhibit J</u>).

30.     On October 1, 2013, the City defaulted on its obligation to make interest payments on its Limited Tax Bonds in the amount of $4,348,211, including $2,266,586 insured by Ambac.  The City also defaulted on its obligation to make interest payments on its Unlimited Tax Bonds in the amount of $9,372,275, including $1,994,281.25 insured by Ambac.  The failures to make these payments are events of default under the respective Bonds.

31.     As a result of the City's failures to make the interest payments due on the Bonds on October 1, 2013, Ambac was required to make the interest payments on the Ambac-insured Unlimited Tax Bonds and Limited Tax Bonds pursuant to the terms of the Ambac Policies, totaling $4,260,867.

32.     On October 1, 2013, pursuant to the Ambac Policies, Ambac made the interest payments on the Bonds that were required by virtue of the City's defaults.

**B.     The City is Required to Deposit the Restricted Funds in Segregated Debt Retirement Funds**

33.     Authority for the City's issuance of the Bonds is governed by Act 34, Act 279, and the Michigan Constitution.  Under Act 34, municipal securities such

as the Unlimited Tax Bonds and Limited Tax Bonds "may be payable from or secured by" any of the following (i) *ad valorem* real and personal property taxes, (ii) special assessments, (iii) the unlimited full faith and credit pledge of the municipality, or (iv) other sources of revenue described in Act 34 for debt or securities authorized by Act 34. Mich. Comp. Laws § 141.2103(l).

34. With respect to the Unlimited Tax Bonds, Michigan has adopted a separate statute (the "Unlimited Tax Election Act," a true and correct copy of which is attached hereto as Exhibit K), specifically to regulate the imposition of *ad valorem* tax levies and the use of tax proceeds for the payment of Unlimited Tax Bonds. Mich. Comp. Laws § 141.161 *et seq.* The Unlimited Tax Election Act provides that the voters of the City "may make 1 or more binding unlimited tax pledges for the payment of 1 or more tax obligations referred to in the ballot . . . [h]owever, the tax which may be levied shall not be excess of a rate or amount sufficient for the payment of the obligations." Mich. Comp. Laws § 141.164(3).

35. In addition, the Uniform Budgeting and Accounting Act (a true and correct copy of which is attached hereto as Exhibit L) requires the City's tax legislation to specify the purpose for each component of the *ad valorem* tax levy, meaning Unlimited Tax Bonds and Limited Tax Bond debt service must be specific and separate line items in each budget and tax bill. Mich. Comp. Laws § 141.421, *et seq.*

36. The City had already reached the applicable charter, statutory, or constitutional tax rate limitations at the time the Unlimited Tax Bonds were issued. Accordingly, the City levied *ad valorem* taxes in excess of the applicable charter, statutory, or constitutional tax rate limitations for the sole purpose of repaying the Unlimited Tax Bonds.

37. The Restricted Funds are *ad valorem* taxes specifically levied to finance certain City projects and systems, including, but not limited to, projects relating to Detroit Institute of Arts Facilities improvements; the acquisition, construction and equipping of several 800 MHz radio frequency towers and related to communication facilities within the City; neighborhood and economic development; public safety facilities improvements; municipal facilities improvements; public lighting system improvements and extensions; recreation, zoo and cultural facility improvements; improvements to the Detroit Historical Museum, the Charles H. Wright Museum of African-American History; and to refund previously-issued General Obligation Bonds (which were themselves issued to fund the foregoing types of capital improvements). The specific projects are described in the official statements of the City prepared in connection with the sale and issuance of the Unlimited Tax Bonds and Limited Tax Bonds and, with respect to the Unlimited Tax Bonds, are separately described and voted upon in the related bond referenda.

38.     Act 34 and the Resolutions provide strict controls over and limitations

upon the use of the *ad valorem* taxes levied to secure the repayment of the

Unlimited Tax Bonds and Limited Tax Bonds.  *See* Act 34 § 701(1), (2), (3);

Resolutions § 301(a).

39.     Section 701(1)(a) of Act 34 provides that the City is required to

include in the amount of *ad valorem* taxes levied each year "[a]n amount such that

the estimated collections will be sufficient to promptly pay, when due, the interest

on [the Unlimited Tax Bonds and Limited Tax Bonds] and the portion of the

principal falling due whether by maturity or by mandatory redemption before the

time of the following year's tax collection."  Act 34, § 701(1)(a).  In addition,

Section 701(3) of Act 34 requires that the City "levy the full amount of taxes

required  . . . for the payment of the [Unlimited Tax Bonds] without limitation as to

rate or amount and in addition to other taxes that the municipality may be

authorized to levy."  Act 34, § 701(3).  This section further requires the City to "set

aside each year from the levy and collection of *ad valorem* taxes as required by this

section as a first budget obligation for the payment of the [Limited Tax Bonds]."

*Id.*

40.     Act 34 then requires that the *ad valorem* taxes necessary to pay debt

service on both the Unlimited Tax Bonds and Limited Tax Bonds be deposited in

segregated Debt Retirement Funds as they are collected:  "As taxes are collected,

there shall be set aside that portion of the collections that is allocable to the payment of the principal and interest on [the Unlimited Tax Bonds and Limited Tax Bonds]. The portion set aside shall be divided pro rata among the various sinking funds and debt retirement funds in accordance with the amount levied for that purpose." Act 34 § 701(6).

41.     Section 701(1)(d)(i) of Act 34 further provides that the taxes specifically collected and pledged for repayment of the Unlimited Tax Bonds and Limited Tax Bonds must be deposited in the applicable Debt Retirement Funds and used for no purpose other than to pay the debt service on the Bonds. As relevant here, Section 701(1)(d)(i) requires that the proceeds of the tax levy be "[d]eposit[ed] in the debt retirement fund established for the [Unlimited Tax Bonds and Limited Tax Bonds] and used to pay debt service charges or obligations on [the Bonds]." Mich. Comp. Laws § 141.2701(1)(d)(i).

42.     Section 705 of Act 34 states, in relevant part, that each Debt Retirement Fund "shall be accounted for separately." Section 705 further makes clear that the "debt retirement funds . . . shall be used only to retire the municipal securities of the municipality for which the debt retirement fund was created" and that they cannot be used for other purposes until after those municipal securities have been retired. Mich. Comp. Laws § 141.2705.

43.     The Resolutions expressly state that the proceeds of all taxes levied to pay the Unlimited Tax Bonds and Limited Tax Bonds are pledged as security for the timely payment of principal and interest on the Bonds when due.  Section 301(a) of the Unlimited Tax Resolutions states that the Unlimited Tax Bonds are

> general obligations of the City, and the unlimited tax, full faith, credit, and resources of the City are hereby irrevocably pledged for the prompt payment of the principal of and interest on the [Bonds].  The City pledges to pay the principal of and interest on the [Unlimited Tax Bonds] from the proceeds of an annual levy of ad valorem taxes on all taxable property in the City without limitation as to rate or amount for the payment thereof.

Section 301(a) of the Limited Tax Resolutions states that the Limited Tax Bonds are

> general obligations of the City, and the limited tax, full faith, credit and resources of the City are hereby irrevocably pledged for the prompt payment of the principal of and interest on the [Bonds].  The City pledges to pay the principal of and interest on the [Limited Tax Bonds] as a first budget obligation from its general fund and in the case of insufficiency thereof, from the proceeds of an annual levy of ad valorem taxes on all taxable property in the City, subject to applicable constitutional, statutory and charter tax rate limitations.

The plain language of Section 301 of the Resolutions thus creates an irrevocable pledge of the City's *ad valorem* taxes as security to guarantee repayment of the Unlimited Tax Bonds and Limited Tax Bonds.

44.     In addition, the proceeds of all taxes levied to pay the Unlimited Tax Bonds and Limited Tax Bonds shall be "placed in the Debt Retirement Fund[s] and held in trust by the Paying Agent." Resolutions § 502. Further, so long as principal and interest on the Bonds remain unpaid, the amounts in the Debt Retirement Funds are to be used only to pay principal and interest on the Bonds and "no moneys shall be withdrawn from the Debt Retirement Fund[s] *except* to pay such principal and interest." *Id.* (emphasis added).

45.     The limitations set forth in the Resolutions were recognized in a State of Michigan Attorney General Opinion, dated February 19, 1982 (the "Attorney General Opinion," a true and correct copy of which is attached hereto as <u>Exhibit M</u>), which states that the taxes levied for the payment of principal and interest on bonds must "be placed in a segregated account" and "may only be used to pay principal and interest on the bonds for which the millage was levied while the bonds are outstanding," and may not be transferred out of the segregated fund while the bonds are outstanding. 1981-1982 Mich. Op. Att'y Gen. 575 (1982).

46.     The City lacks any equitable or beneficial interest in the Restricted Funds, which consist of the revenues generated by the *ad valorem* taxes specifically authorized, levied, and/or pledged and earmarked to secure the repayment of the Unlimited Tax Bonds and Limited Tax Bonds. But for voter approval, which specified the limited purpose for which the taxes could be used,

the City could not levy and collect the *ad valorem* taxes that secure repayment of the Unlimited Tax Bonds. As for the Limited Tax Bonds, the first *ad valorem* taxes collected within the constitutional limit (the "first budget obligation") are pledged and earmarked to secure their repayment. In other words, the first collections of the taxes must be used to pay the Limited Tax Bonds before any other general obligations are paid from them. The City is prohibited by law from collecting and distributing the *ad valorem* taxes levied with respect to the Unlimited Tax Bonds except to repay principal and interest on the Unlimited Tax Bonds, or from distributing the *ad valorem* taxes earmarked for the Limited Tax Bonds except to repay principal and interest on the Limited Tax Bonds. Nothing in chapter 9 or elsewhere in the Bankruptcy Code allows the City to disregard the state law restrictions imposed on the Restricted Funds and use the funds for a non-authorized purpose.

47.     Act 34 further provides that "[a]n officer who willfully fails to perform the duties" described above "is *personally liable* to the municipality or to a holder of a municipal security for loss or damage arising from his or her failure." Mich. Comp. L. § 141.2701(7) (emphasis added). Based on the City's representations, and the duties and responsibilities of the Emergency Manager, the Finance Director, the Deputy Finance Director, and the Treasurer, the Individual

Defendants have willfully failed to perform their duties under Act 34 and therefore are personally liable to Ambac for loss or damage arising from those failures.

### C. The Prepetition Proposal and the Proposed Postpetition Financing

48.     As evidenced in the Prepetition Proposal, prior to its Chapter 9 filing, the City collected and set aside the portion of the *ad valorem* taxes specified for the repayment of the Unlimited Tax Bonds, as required by Michigan law.

49.     In both the City's Comprehensive Annual Financial Report for the Fiscal Year Ended June 30, 2012, independently audited by KPMG LLP pursuant to Michigan law (a true and correct copy of which is attached hereto as Exhibit N), and the City's Ten-Year Plan, dated June 26, 2013 (the "Ten-Year Plan," a true and correct copy of which is attached hereto as Exhibit O), the City reports that it levied and collected *ad valorem* taxes in an amount sufficient to pay the debt service owed on the Unlimited Tax Bonds, excluding the Series 2010E Bonds which are payable from distributable state aid.

50.     For Fiscal Year 2013-14, the City's Ten-Year Plan forecasts that the City will levy and collect an amount sufficient to pay the debt service owed on the Unlimited Tax Bonds, excluding the Series 2010E Bonds which are payable from distributable state aid.

51.     On information and belief, prior to its Chapter 9 filing, the City set aside the first *ad valorem* property taxes collected, within the statutory limit, in the

amount necessary to pay debt service on the Limited Tax Bonds, as required by Michigan law.

52.     In its Prepetition Proposal, while the City indicated that it would continue to collect the Restricted Funds under its restructuring scenario, there were no line items for payments on the Unlimited Tax Bonds and Limited Tax Bonds. Thus, the City indicated that it would use the Restricted Funds for purposes other than to pay principal and interest on the Unlimited Tax Bonds and Limited Tax Bonds, in direct violation of Michigan law.

53.     In fact, as alleged above, on October 1, 2013, the City failed to make the payments due on the Unlimited Tax Bonds and Limited Tax Bonds.

54.     On November 5, 2013, the City filed its *Motion of the Debtor for a Final Order Pursuant to 11 U.S.C. §§ 105, 362, 364(c)(1), 364(c)(2), 364(e), 364(f), 503, 507(a)(2), 904, 921 and 922 (I) Approving Post-Petition Financing, (II) Granting Liens and Providing Superpriority Claim Status and (III) Modifying Automatic Stay* [Docket No. 1520] (the "Financing Motion").[2]

55.     The relief requested in the Financing Motion (if approved by this Court) would grant Barclays Capital, Inc. ("Barclays") super-priority status, pursuant to sections 364 ("Section 364"), 503 and 507 of the Bankruptcy Code,

_____

[2] Ambac reserves its right to object to the Financing Motion on any and all grounds.  The relief requested in this Complaint is not requested in lieu of asserting any such objections to the Financing Motion.

over administrative expenses, postpetition claims, and all prepetition unsecured claims. It appears the City is attempting to manufacture and confer upon Barclays a direct right of payment in and to the Restricted Funds in direct contravention of Michigan law (which restricts the payment of such funds to the holders of the Unlimited Tax Bonds and Limited Tax Bonds). If approved by this Court in the form proposed by the City, the City's postpetition financing would directly harm Ambac by unjustifiably impairing the Bondholders' and Ambac's interests in the Restricted Funds.

56.     The relief sought in this Complaint is ripe for adjudication by this Court because, among other reasons, (1) the City is not segregating the Restricted Funds as required by Michigan law, (2) on October 1, 2012, the City failed to make payments due on the Unlimited Tax Bonds and Limited Tax Bonds, notwithstanding that it had collected sufficient *ad valorem* tax proceeds to pay the Bondholders, and apparently intends to default on principal and interest payments due on the Unlimited Tax Bonds and Limited Tax Bonds on April 1, 2014, (3) the City has not segregated but rather has diverted (and intends to continue to divert) the funds specifically collected and/or earmarked for the purpose of paying the Bondholders, and (4) the City has requested approval for postpetition financing in the Financing Motion that would directly impair the Bondholders' and Ambac's interest in the Restricted Funds.

## Count 1
## Declaratory Judgment that Michigan State Law
## Requires Defendants to Deposit the Restricted
## Funds into the Debt Retirement Funds

57.     Ambac repeats and realleges each of the allegations contained in paragraphs [1-56] above, as if fully set forth herein.

58.     An actual, ripe, and justiciable controversy has arisen between the parties regarding whether Michigan law requires the Defendants to segregate the Restricted Funds.  Defendants have made clear to Ambac that they will not segregate the Restricted Funds and have already used, and intend to continue to use, the Restricted Funds for purposes other than repayment of the Unlimited Tax Bonds and Limited Tax Bonds, in contravention of Michigan law and in derogation of Ambac's rights.

59.     For the reasons stated above, Ambac is entitled to a declaratory judgment that Michigan law requires that, as the City and the Individual Defendants collect *ad valorem* taxes, they deposit the Restricted Funds allocable to each series of Unlimited Tax Bonds and Limited Tax Bonds into the related Debt Retirement Funds.

## Count 2
## Declaratory Judgment that Michigan Law Requires Defendants
## to Segregate and Not Commingle the Restricted Funds

60.     Ambac repeats and realleges each of the averments contained in paragraphs [1-59] above, as if fully set forth herein.

61.     An actual, ripe, and justiciable controversy has arisen between the parties regarding whether Michigan law requires the Defendants to segregate the Restricted Funds.  Defendants have made clear to Ambac that they will not segregate the Restricted Funds and have already used, and intend to continue to use, the Restricted Funds for purposes other than repayment of the Unlimited Tax Bonds and Limited Tax Bonds, in contravention of Michigan law and in derogation of Ambac's rights.

62.     For the reasons stated above, Ambac is entitled to a declaratory judgment that Michigan law requires the City and the Individual Defendants to segregate and not commingle the Restricted Funds with other funds of the City.

### Count 3
### Declaratory Judgment that the *Ad Valorem* Tax Proceeds Are Restricted Funds and that Michigan Law Prohibits Defendants from Using Restricted Funds for Purposes Other Than Repaying the Bondholders

63.     Ambac repeats and realleges each of the averments contained in paragraphs [1-62] above, as if fully set forth herein.

64.     An actual, ripe, and justiciable controversy has arisen between the parties regarding whether Michigan law requires the Defendants to segregate the Restricted Funds.  Defendants have made clear to Ambac that they will not segregate the Restricted Funds and have already used, and intend to continue to use, the Restricted Funds for purposes other than repayment of the Unlimited Tax

Bonds and Limited Tax Bonds, in contravention of Michigan law and in derogation of Ambac's rights.

65.     For the reasons stated above, Ambac is entitled to a declaratory judgment that the proceeds of the *ad valorem* taxes levied and collected by the City for the purpose the purpose of paying the Bondholders of the Unlimited Tax Bonds, and the proceeds of the *ad valorem* taxes pledged and earmarked for the purpose of paying the Bondholders of the Limited Tax Bonds, are Restricted Funds, and that Michigan law prohibits the City and the Individual Defendants from using the Restricted Funds for any purpose other than repaying the Bondholders.

<u>Count 4</u>
**Declaratory Judgment that Defendants
are Prohibited From Granting Any Super-Priority Status or Any Other
Interest under 11 U.S.C. § 364 That Would Impair the Interests of the
Holders of the Unlimited Tax Bonds and Limited Tax Bonds and Ambac in
<u>the Restricted Funds</u>**

66.     Ambac repeats and realleges each of the averments contained in paragraphs [1-65] above, as if fully set forth herein.

67.     An actual, ripe, and justiciable controversy has arisen between the parties regarding whether Michigan law requires the Defendants to segregate the Restricted Funds.  Defendants have made clear to Ambac that they will not segregate the Restricted Funds and have already used, and intend to continue to use, the Restricted Funds for purposes other than repayment of the Unlimited Tax

26

Bonds and Limited Tax Bonds, in contravention of Michigan law and in derogation of Ambac's rights.

68.    For the reasons stated above, Ambac is entitled to a declaratory judgment that the City and the Individual Defendants are prohibited from granting any super-priority status or any other interest to any creditor or any other person under Section 364, pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the interests of the Bondholders and Ambac in the Restricted Funds.

**Count 5**
**Order Requiring Defendants to**
**Comply With the Court's Declarations**

69.    Ambac repeats and realleges each of the averments contained in paragraphs [1-68] above, as if fully set forth herein.

70.    If the Court determines that Ambac is entitled to relief under Counts One, Two, Three, and/or Four, Ambac is entitled to an order directing the Defendants to deposit the Restricted Funds in the Debt Retirement Funds, and to segregate and not commingle the Restricted Funds with other funds of the City, and to prohibit Defendants from granting any super-priority status or any other interest to any creditor or any other person under Section 364, pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the interests of the Bondholders and Ambac in the Restricted Funds.

## REQUESTS FOR RELIEF

**WHEREFORE**, Ambac respectfully requests of a declaratory judgment and order:

    (1)    On Count 1, declaring that, under Michigan law, the City and the Individual Defendants must deposit the Restricted Funds in the Debt Retirement Funds as the Defendants collect *ad valorem* taxes;

    (2)    On Count 2, declaring that, under Michigan law, the City and the Individual Defendants are required to segregate and not commingle the Restricted Funds with other funds of the City;

    (3)    On Count 3, declaring that, under Michigan law, the proceeds of the *ad valorem* taxes levied and collected by the City for the purpose of paying the Bondholders of the Unlimited Tax Bonds, and the proceeds of the *ad valorem* taxes pledged and earmarked for the purpose of paying the Bondholders of the Limited Tax Bonds, are Restricted Funds, and the City and the Individual Defendants are prohibited from using the Restricted Funds for any purposes other than repaying holders of the Unlimited Tax Bonds and Limited Tax Bonds;

    (4)    On Count 4, declaring that, under Michigan law, the City and the Individual Defendants are prohibited from granting any super-priority status or any other interest to any creditor or any other person under

28

Section 364, pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the interests of the Bondholders and Ambac in the Restricted Funds; and

(5)     On Count 5, an order directing the Defendants to deposit the Restricted Funds in the Debt Retirement Funds and to segregate and not commingle the Restricted Funds with other funds of the City, and prohibiting the Defendants from granting any super-priority status or any other interest to any creditor or any other person under Section 364, pursuant to the relief requested in the Financing Motion, or otherwise, that would impair the Bondholders' interest in the Restricted Funds.

(6)     On all counts, such other and further relief to the Plaintiffs as the Court may deem proper.

Respectfully Submitted,

**ARENT FOX LLP**

Dated:  November 8, 2013          By:  _/s/ Carol Connor Cohen____
                                   CAROL CONNOR COHEN
                                   CAROLINE TURNER ENGLISH
                                   1717 K Street, NW
                                   Washington, DC  20036-5342
                                   (202) 857-6054
                                   Carol.Cohen@arentfox.com

DAVID L. DUBROW
MARK A. ANGELOV
1675 Broadway
New York, NY 10019
(212) 484-3900

and

**SCHAFER AND WEINER, PLLC**

DANIEL J. WEINER (P32010)
BRENDAN G. BEST (P66370)
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI  48304
(248) 540-3340
bbest@schaferandweiner.com

*Counsel for Ambac Assurance Corporation*

## <u>EXHIBITS</u>

**Exhibit A**     City of Detroit Proposals to Voters (Proposals P,R,S,N,T)

**Exhibit B**     Michigan Constitution of 1963, Article IX, Section 6

**Exhibit C**     Revised Municipal Finance Act (Act 34 of 2001)

**Exhibit D**     The Bond Resolutions

**Exhibit E**     The Home Rule City Act (Act 279 of 1909)

**Exhibit F**     Local Financial Stability and Choice Act (Act 436 of 2012)

**Exhibit G**     City of Detroit Proposal for Creditors (June 14, 2013)

**Exhibit H**     Specimens of the Ambac-Insured Bonds
**Exhibit I**      The Sale Orders

**Exhibit J**     The Ambac Policies
**Exhibit K**     The Unlimited Tax Election Act (Act 189 of 1979)

**Exhibit L**     The Uniform Budgeting and Accounting Act (Act 2 of 1968)

**Exhibit M**     State of Michigan Attorney General Opinion (February 19, 1982)

**Exhibit N**     City of Detroit Comprehensive Annual Financial Report for the Fiscal Year Ended June 30, 2012

**Exhibit O**     City of Detroit Ten-Year Plan